**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| PAMELA LARRIMORE, as Personal Representative of the Estate of Phillip Chase Larrimore,<br><br>Plaintiff,<br><br>v.<br><br>MARION COUNTY, MARION COUNTY SHERIFF'S OFFICE, SHERIFF J. BRIAN WALLACE, in his individual capacity, and DANIEL CRIBB, in his individual capacity,<br><br>Defendants. | **Civil Case No. 4:25-cv-04149-JD-TER**<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("Report" or "R&R") of United States Magistrate Judge Thomas E. Rogers, III, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(f) (D.S.C.). (DE 27.) The Report addresses Defendant Daniel Cribb's ("Cribb") Motion for Summary Judgment. (DE 21.) The Report recommends granting the Motion as to Plaintiff Pamela Larrimore's state law negligence-based claims but denying summary judgment on Plaintiff's claim under 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth Amendment. (DE 27 at 7–17.)

Cribb timely objected to the portions of the Report recommending denial of summary judgment on the Fourth Amendment claim and qualified immunity. (DE 28.) Plaintiff filed a reply in opposition. (DE 29.) For the reasons below, the Court adopts the Report in part, rejects it in part, and grants Cribb's Motion for Summary Judgment.

## A. Background

The Report sets forth the relevant factual record, which the Court incorporates except to the extent modified below. (DE 27 at 1–6.) The Court provides the following summary to frame the issues presented by Cribb's objections.

### 1. Factual Background

This action arises from the death of Phillip Chase Larrimore ("Larrimore") following a vehicle pursuit on March 26, 2022. Late that evening, Larrimore fled from officers of the Horry County Police Department ("HCPD") toward Marion County. HCPD requested assistance from the Marion County Sheriff's Office and advised that Larrimore was wanted for first-degree burglary and domestic violence of a high and aggravated nature. (DE 27 at 2.)

At the time, Marion County law enforcement officers were assisting fire personnel with a significant wildfire in the area. Roads had been closed because of heavy smoke and the presence of fire personnel and equipment. Cribb responded to HCPD's request and activated his blue lights and siren as Larrimore approached. Larrimore did not stop and continued onto Highway 908 and then Highway 378. (DE 27 at 2–4.)

Cribb thereafter attempted to immobilize Larrimore's truck using a precision immobilization technique, commonly referred to as a "PIT" maneuver. The first maneuver caused the truck to leave the roadway and spin, but Larrimore regained control and continued to flee. During the ensuing pursuit, Cribb radioed that Larrimore was traveling approximately 52 miles per hour and that traffic was light. Cribb pulled alongside the truck and observed a single occupant. (DE 27 at 4.)

At approximately 11:55 p.m., Cribb executed a second PIT maneuver. Larrimore's truck left the roadway, rolled over, and ejected him from the vehicle. The pursuit lasted about four minutes, during which the vehicles safely passed a few vehicles traveling in the opposite direction. Cribb immediately notified dispatch, requested emergency medical assistance, and rendered aid. Larrimore was airlifted to the hospital, where he later died. (DE 27 at 4–5.)

**2. Procedural Background**

Plaintiff originally filed this action in the Marion County Court of Common Pleas, and Defendants removed the case to this Court on May 16, 2025. (DE 1.) Plaintiff asserts claims arising from the pursuit and Larrimore's death against Marion County, the Marion County Sheriff's Office, Sheriff J. Brian Wallace, and Cribb. Cribb is sued individually and moved for summary judgment on the claims asserted against him. (DE 21.) Plaintiff filed a response in opposition (DE 24), and Cribb filed a reply (DE 25). The remaining Defendants have not filed dispositive motions. (DE 27 at 1 n.1.)

**B. Report and Recommendation**

The Report first concluded that Plaintiff's excessive-force claim, although pleaded under the Fourteenth Amendment, is properly analyzed under the Fourth Amendment because Cribb intentionally used vehicle contact to terminate Larrimore's freedom of movement. (DE 27 at 7–8.)

Applying *Graham v. Connor*, 490 U.S. 386 (1989), the Magistrate Judge found that the first factor—the severity of the crime—favored Cribb because Cribb reasonably believed Larrimore was fleeing after serious, violent criminal conduct.

The Magistrate Judge likewise found that the third factor favored Cribb because Larrimore was actively attempting to evade arrest by flight when the second PIT maneuver occurred. (DE 27 at 11, 13.)

The Report determined, however, that the second *Graham* factor—whether Larrimore posed an immediate threat to officers or others—favored Plaintiff. The Report found *Payne v. Moser*, 172 F.4th 408 (4th Cir. 2026), instructive and quoted its PIT analysis at length. Viewing the evidence in Plaintiff's favor, it reasoned that the pursuit was not high speed and that the record did not show significant danger to the public when Cribb executed the second PIT maneuver. The Report also concluded that any threat Larrimore had posed to his former girlfriend in the past or might pose in the future was "irrelevant" because the analysis should focus on the moment force was employed. It found no record evidence showing that emergency responders were in Larrimore's immediate path at that time. (DE 27 at 11–13.) In a footnote, the Report rejected Cribb's argument that persistent evasion and the uncertainty created by a fleeing violent-felony suspect made the second factor favor him, reasoning that the argument would collapse the three *Graham* factors into one. (*Id.* at 13 n.6.) Considering the second factor and the severity of Larrimore's injuries, the Report concluded that the Court could not determine as a matter of law that Cribb's conduct was objectively reasonable. (*Id.* at 13–14.)

The Report next concluded, "[f]or the same reasons," that qualified immunity was inappropriate. (DE 27 at 14.) It did not separately analyze whether pre-March-2022 precedent clearly established the asserted right in this factual setting. Instead,

after returning to its conclusion that the record did not show a substantial immediate threat, the Report cited *Byers v. Painter*, 173 F.4th 155, 168 (4th Cir. 2026), for the proposition that deadly force is justified only when a suspect poses an immediate threat to officers or others. (DE 27 at 14–15.) It, therefore, recommended denying summary judgment on Plaintiff's Fourth Amendment claim. (*Id.* at 15.)

As to Plaintiff's state law negligence-based claims, the Report concluded that the South Carolina Tort Claims Act precludes the claims against Cribb individually. It found no genuine dispute that Cribb was acting within the scope of his official duties and no evidence that his conduct constituted actual fraud, actual malice, or an intent to harm within the meaning of S.C. Code Ann. § 15-78-70(b). The Report, therefore, recommended granting Cribb summary judgment on those claims. (DE 27 at 15–17.)

## C. Legal Standard

### 1. Report and Recommendation

A magistrate judge's recommendation carries no presumptive weight, and the district court retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Under 28 U.S.C. § 636(b)(1), the Court reviews de novo any portion of the Report to which a specific objection is made. Absent a timely specific objection, the Court need only "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

*Elijah v. Dunbar* explains that specificity, not novelty, controls. 66 F.4th 454, 460–61 (4th Cir. 2023). An objection must identify the challenged finding or recommendation "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). A general objection, by contrast, does not require the district court to relitigate the entire case and is reviewed only for clear error. *Id.* at 460–61.

**2. Summary Judgment**

Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact" and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is material only if it might affect the outcome under governing law, and it is genuine only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In conducting that inquiry, the Court views the evidence and draws all reasonable inferences in the nonmovant's favor, but the nonmovant must identify evidence sufficient to permit a reasonable jury to return a verdict in her favor. *See id.* at 248, 255; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

**3. Fourth Amendment Excessive Force and Qualified Immunity**

A claim that law enforcement used excessive force to effect a seizure is governed by the Fourth Amendment's objective-reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388, 395–97 (1989). The inquiry requires careful attention to the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The factors guide, but do not mechanically resolve, the ultimate question whether the force used was proportional to the governmental interests at stake. *See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 899–902 (4th Cir. 2016). The extent of the plaintiff's injuries may also inform the nature and quality of the intrusion. *See Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

The Supreme Court has also made clear that the totality-of-the-circumstances inquiry is not confined to the precise instant force is used. In *Barnes v. Felix*, the Court rejected a moment-of-threat rule that excluded relevant events preceding the use of force and explained that earlier facts may inform how a reasonable officer would understand and respond to later events. 605 U.S. 73, 80–83 (2025). The circumstances at the precise time force is used will often matter most, but a court cannot conduct the required totality review with "chronological blinders." *Id.* at 81–83.

Qualified immunity separately protects an officer from damages unless the facts establish a constitutional violation and the unlawfulness of the officer's conduct was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Courts may address either prong first. *Id.* at 236. A right is clearly established only when existing precedent places the constitutional question "beyond debate," and the Supreme Court has repeatedly cautioned that this inquiry must not be conducted at a high level of generality, particularly in Fourth Amendment cases. *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 741–42 (2011); *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam).

**D. Discussion**

Cribb does not object to the recommendation that summary judgment be granted on Plaintiff's state law claims. He objects to the recommendation that his Motion be denied as to the Fourth Amendment excessive-force claim. (DE 28.) Cribb argues that the Report gave insufficient consideration to the totality of the circumstances, treated *Payne* too mechanically, and improperly isolated the circumstances existing at the precise instant of the second PIT maneuver. He also argues that, regardless of the constitutional merits, the Report erred in denying qualified immunity based in part on decisions issued approximately four years after the March 2022 incident. (DE 28 at 1–15.)

Plaintiff responds that the Magistrate Judge properly applied *Graham* and considered the full circumstances. She emphasizes that Larrimore was traveling approximately 50 miles per hour on a rural road, no pedestrians were visible, and no firefighter or firefighting equipment was visible when the second PIT maneuver occurred. Plaintiff also relies on *Payne* as factually instructive and argues that the general *Graham* framework was clearly established in March 2022. (DE 29 at 2–6.)

The parties' arguments present two analytically distinct questions. The first concerns the constitutional merits: what circumstances properly enter the Fourth Amendment proportionality inquiry, and what significance should be assigned to the conditions existing when Cribb executed the second PIT maneuver? The second

concerns qualified immunity: assuming the evidence could support a constitutional violation under the law as understood today, whether precedent existing on March 26, 2022, made the unlawfulness of Cribb's conduct beyond debate. The Court considers those questions separately.

**1. The Fourth Amendment Merits**

The Report's merits analysis presents a material temporal-framing problem, although the Court need not resolve the ultimate constitutional question. The Report treated any threat Larrimore may have posed to his former girlfriend in the past or might pose in the future as "irrelevant" because the Court should focus on the moment force was employed. (DE 27 at 12–13.) *Barnes* forecloses treating relevant antecedent events as categorically irrelevant merely because they preceded the precise instant force was used. 605 U.S. at 80–83. The Court does not hold that the suspected domestic violence, standing alone, supplied an immediate threat at the time of the second PIT maneuver. The narrower point is what Cribb knew about the serious violent offenses and Larrimore's continuing refusal to yield to emergency lights and siren. These facts, coupled with Larrimore's renewed flight after the first PIT maneuver, and the wildfire response and associated road closures could inform how a reasonable officer assessed the need to terminate the pursuit and the proportionality of the force used. Those circumstances form part of the totality before the proportionality balance is performed. *See Barnes*, 605 U.S. at 80–83; *Armstrong*, 810 F.3d at 899–902. Nor does considering that context collapse the *Graham* factors. The fact of flight bears directly on the third factor, while the circumstances of the

continuing flight may also inform the broader totality-of-the-circumstances inquiry without becoming dispositive of the second factor.

At the same time, *Barnes* does not make the circumstances at the moment of force immaterial, nor does it establish that prior dangerous conduct necessarily justifies later force. The Supreme Court recognized that the situation at the time of the challenged force often matters most. *Id.* at 80–81. Viewing the record in Plaintiff's favor, Larrimore was traveling at approximately 52 miles per hour on a rural roadway with light traffic. The Report noted that, over the approximately four-minute pursuit, the vehicles safely passed a few vehicles traveling in the opposite direction. No pedestrian, motorist, officer, or firefighter is shown to have been directly in his path when Cribb executed the second PIT maneuver. (DE 27 at 4–5, 12–13.) Those facts materially distinguish this case from the dangerous driving in *Scott v. Harris*, 550 U.S. 372 (2007), *Abney v. Coe*, 493 F.3d 412 (4th Cir. 2007), and *Plumhoff v. Rickard*, 572 U.S. 765 (2014).

*Payne* is likewise instructive but not controlling on the merits here. In *Payne*, the first *Graham* factor only slightly favored the officer, while the second and third favored Payne. The underlying offense was nonviolent. Payne was driving slowly out of a shopping complex. The officers were traveling in unmarked vehicles, and, viewing the evidence in Payne's favor, they had not activated lights or sirens or attempted to pull him over before using vehicle contact. 172 F.4th at 412–14. Here, by contrast, the Report found that both the first and third *Graham* factors favor Cribb: Cribb reasonably understood Larrimore to be wanted for serious violent offenses, and

Larrimore knowingly continued to flee after Cribb activated his emergency equipment and after the first PIT maneuver failed. (DE 27 at 11, 13.) Those distinctions prevent *Payne* from functioning as a simple low-speed rule.

Plaintiff is correct that *Payne* need not have been decided in 2022 for its reasoning under *Graham* to inform the Court's present-day merits analysis. (DE 29 at 5–6.) But that point does not resolve the separate qualified-immunity inquiry, which asks what law gave Cribb fair notice in March 2022. Cribb, for his part, urges the Court to go further and hold the second PIT maneuver reasonable as a matter of law under *Scott* and *Abney*. (DE 28 at 3–13.) The Court declines to do so. On the Plaintiff-favorable facts just described, Larrimore's driving at the time of the second maneuver was materially less dangerous than the conduct in those cases. Qualified immunity provides the narrower and sufficient ground for decision.

Plaintiff also points to evidence concerning PIT training and departmental policy and contends that the first unsuccessful maneuver and the rollover following the second support an inference that the technique was improperly executed. (DE 29 at 4–5.) Those circumstances may provide factual context, and the fatal result confirms the substantial nature of the intrusion. But neither compliance with departmental policy nor the tactical success of a particular PIT maneuver defines the Fourth Amendment standard. *See Abney*, 493 F.3d at 419–20. The constitutional inquiry remains whether the force intentionally employed was objectively reasonable under the totality of the circumstances. The Court, therefore, need not decide whether Cribb complied with every aspect of MCSO policy or training, matters that may bear

differently on claims involving the remaining Defendants. Indeed, the Report expressly declined to rely on Plaintiff's expert evidence in reaching its recommendation. (DE 27 at 14 n.7.)

The competing considerations make the constitutional merits materially closer than the Report's moment-focused analysis suggests. The Court nevertheless need not decide whether the second PIT maneuver was objectively unreasonable. *Pearson* permits the Court to proceed directly to the clearly established prong when that ground resolves the claim. 555 U.S. at 236. That narrower course is appropriate here. The Court, therefore, assumes without deciding that a reasonable jury could find a Fourth Amendment violation and turns to whether the unlawfulness of Cribb's conduct was clearly established on March 26, 2022.

**2. Qualified Immunity**

At the clearly established prong, the question is not whether *Graham* and *Tennessee v. Garner*, 471 U.S. 1 (1985), generally prohibited excessive or disproportionate force. Plaintiff's reliance on the longstanding nature of the *Graham* framework does not collapse the constitutional-merits and qualified-immunity inquiries. There is no question that *Graham* governed excessive-force claims in March 2022. The question at qualified-immunity prong two, however, is whether preexisting law made the unlawfulness of the conduct sufficiently clear that every reasonable officer confronting materially similar circumstances would have understood that the second PIT maneuver violated the Fourth Amendment. *See Mullenix*, 577 U.S. at 11–15; *Brosseau v. Haugen*, 543 U.S. 194, 198–201 (2004) (per curiam).

The Court does not require a prior case involving an identical PIT maneuver. A right may be clearly established despite novel factual circumstances when controlling authority or a robust consensus gives fair warning that the conduct is unlawful. *See Williams v. Strickland*, 917 F.3d 763, 769–70 (4th Cir. 2019). But the Supreme Court has emphasized that "specificity is especially important in the Fourth Amendment context." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam). That demand for specificity has force in the vehicular-flight cases discussed below.

In *Brosseau v. Haugen*, the Supreme Court considered qualified immunity for an officer who shot a suspect attempting to flee by vehicle and emphasized that "this area is one in which the result depends very much on the facts of each case." 543 U.S. 194, 201 (2004) (per curiam). Because none of the then-existing cases squarely governed the situation confronting the officer, the Court granted qualified immunity. *Id*. *Mullenix* later rejected as too general the proposition that clearly established law prohibits deadly force whenever a fleeing felon does not pose a sufficient threat of harm. 577 U.S. at 12–15. It characterized excessive-force precedent involving vehicular flight as a "hazy legal backdrop" and required attention to the circumstances confronting the officer. *Id*. at 14–15.

The Supreme Court's and Fourth Circuit's pre-2022 vehicular-pursuit cases did not place Cribb's conduct beyond debate. *Scott* is relevant not because it made all vehicle-contact force lawful, but because it shows why the absence of a visible third party at the instant of contact does not itself supply the constitutional answer. The Supreme Court held it reasonable to use intentional vehicle contact to terminate a

dangerous high-speed chase even though the maneuver created a high likelihood of serious injury or death to the fleeing motorist. 550 U.S. at 383–86. And the Court expressly noted that no vehicle or pedestrian was immediately endangered at the precise point of contact *because* the officer had waited until the road was clear. *Id.* at 380 n.7. Thus, Plaintiff's no-visible-bystander point is an important merits fact, but *Scott* did not make that fact, standing alone, dispositive.

The absence of a motorist or pedestrian immediately endangered at the point of contact, therefore, cuts in more than one direction. It supports Plaintiff's contention that Larrimore was not, at that instant, bearing down on an identifiable third party. But it is also consistent with Cribb selecting a location where an attempt to terminate the continuing flight posed less collateral risk than it might have posed in traffic or near pedestrians. The Court need not decide which inference ultimately carries greater weight in the constitutional balance. The point for present purposes is narrower: neither *Graham* nor *Scott* makes the absence of an identifiable person in the vehicle's immediate path dispositive of the reasonableness of intentional vehicle contact used to terminate an ongoing flight.

Shortly thereafter, the Fourth Circuit applied *Scott* in *Abney*. Assuming that the deputy intentionally struck a fleeing motorcycle, the court held the force reasonable because the motorcyclist's driving over the course of the pursuit created a substantial public-safety risk. 493 F.3d at 416–18. Although one segment of that pursuit occurred in fairly heavy traffic without either vehicle exceeding 55 miles per hour, the record also included repeated double-yellow-line violations, stop-sign

violations, evasive maneuvers, and conduct that forced motorists from the road. *Id.* at 414–18. The Fourth Circuit, therefore, rejected speed as dispositive and assessed the danger presented by the pursuit as a whole. *Id.* at 418. It also held that violation of a departmental policy restricting precision-intervention techniques did not itself establish a Fourth Amendment violation. *Id.* at 419–20.

Likewise, *Plumhoff* held, in the alternative, that officers were entitled to qualified immunity for lethal force used to terminate a dangerous vehicular pursuit because no clearly established law prohibited their conduct. 572 U.S. at 778–81. The Court reiterated that *Graham* and *Garner*, "cast at a high level of generality," did not themselves clearly establish the answer in the specific vehicular-flight circumstances before it. *Id.* at 779.

To be sure, the pursuits in *Scott*, *Abney*, and *Plumhoff* involved driving materially more dangerous than the conduct Plaintiff attributes to Larrimore at the time of the second PIT maneuver. Those decisions, therefore, do not compel a conclusion that Cribb's conduct was constitutionally reasonable. But qualified immunity asks a different question: whether precedent existing in March 2022 clearly established that Cribb's conduct was unconstitutional. Those cases do not provide such notice; instead, they underscore the fact-specific nature of the constitutional inquiry in vehicular-flight cases.

The Fourth Circuit's preexisting *Waterman–Williams* line does not clearly establish the asserted right either. In *Waterman v. Batton*, the Fourth Circuit held that force justified while a vehicle posed an immediate trajectory threat could become

unreasonable once that justification had been eliminated, including after the vehicle passed the officers and no longer posed an imminent threat to them. 393 F.3d 471, 481–82 (4th Cir. 2005). The court later held in *Williams v. Strickland* that *Waterman* had clearly established by 2012 that officers may not employ deadly force against a driver once they are no longer in the vehicle's trajectory. 917 F.3d 763, 769–70 (4th Cir. 2019). Those cases thus mark a clear temporal boundary for gunfire after the immediate vehicle-as-weapon threat has passed. But neither addressed intentional police-vehicle contact employed to terminate a still-ongoing flight after the driver had ignored lights and siren and continued after an earlier immobilization attempt. They do not clearly establish a categorical rule that such vehicle contact is unconstitutional unless a specific officer or bystander is in the fleeing vehicle's path at the instant of contact. Under *Mullenix*, those materially different firearm cases did not place the constitutionality of Cribb's second PIT maneuver beyond debate.

The later decisions on which the Report and the parties rely do not alter the clearly established inquiry. *Barnes* was decided in 2025, and *Payne* and *Byers* were decided in 2026. Those cases may illuminate the Court's present-day understanding of the constitutional merits or explain how earlier principles apply, but they cannot themselves supply fair warning four years earlier. Qualified immunity is measured against the law existing when the challenged conduct occurred. *See Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013). The Court, therefore, looks to the pre-March-2022 authorities underlying the parties' competing formulations rather than treating the later cases as the source of clearly established law.

Nor does *Byers*'s later reliance on *Hensley v. Price* supply the missing notice in this materially different setting. *Byers* concluded that *Hensley* clearly established the unlawfulness, on Byers's alleged facts, of shooting an armed suspect who made no "threatening or furtive movement" toward officers or others. 173 F.4th at 166–68. *Hensley* itself involved officers shooting a man at his home who held a handgun pointed toward the ground, never raised it toward the officers, and otherwise did not threaten them. 876 F.3d 573, 578, 583–84 (4th Cir. 2017). Neither case involved intentional police-vehicle contact to terminate a knowing and continuing vehicular flight. Given *Brosseau* and *Mullenix*'s insistence on factual specificity in vehicular-flight cases, *Hensley* did not place the constitutionality of Cribb's second PIT maneuver beyond debate.

Viewed at the required level of specificity, the question is whether, as of March 26, 2022, existing precedent clearly established that the Fourth Amendment prohibits an officer from intentionally using vehicle contact to terminate the ongoing vehicular flight of a suspect who:

- was reasonably understood by the officer to be wanted for serious violent offenses;
- knowingly refused to yield to emergency lights and sirens and continued to flee after an initial PIT maneuver failed;
- was traveling at approximately 52 miles per hour on a rural roadway with light traffic;
- was heading toward an area the officer understood to be affected by an active wildfire response and road closures; but
- was not, at the point of the second maneuver, visibly threatening a particular motorist, pedestrian, or officer.

Plaintiff has identified no controlling Supreme Court or Fourth Circuit authority existing on March 26, 2022, that answered that materially similar question in her favor, and the Court has identified none. Nor has Plaintiff shown that the unlawfulness of Cribb's conduct was otherwise apparent or identified a robust consensus of persuasive authority placing the answer beyond debate. The general principles of *Graham* and *Garner* do not, by themselves, clearly establish the answer in this fact-specific vehicular-pursuit context. *See Plumhoff*, 572 U.S. at 779–81; *Mullenix*, 577 U.S. at 12–15; *Brosseau*, 543 U.S. at 199–201. And this is not an obvious case in which those broad principles alone make the result apparent. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam). Accordingly, even assuming without deciding that a reasonable jury could conclude that Cribb's second PIT maneuver was objectively unreasonable, the unlawfulness of his conduct was not clearly established. Cribb is, therefore, entitled to qualified immunity, and his objection to the Report's recommendation on the § 1983 claim is sustained on that ground.

**E. Remaining State Law Claims**

No party specifically objects to the Magistrate Judge's recommendation that Cribb be granted summary judgment on Plaintiff's state law negligence-based claims. The Court has reviewed that portion of the Report for clear error and finds none. The Court, therefore, adopts the Report's recommendation that Cribb is entitled to summary judgment on those claims. (DE 27 at 15–17.)

**F. Conclusion**

After a thorough review of the record, the applicable law, the Report and Recommendation, Cribb's objections, and Plaintiff's reply, the Court ORDERS as follows:

1. Cribb's objections (DE 28) are SUSTAINED to the extent he contends that he is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive-force claim.

2. The Report and Recommendation (DE 27) is ADOPTED IN PART and REJECTED IN PART. The Court ADOPTS the Report to the extent it construes Plaintiff's excessive-force claim under the Fourth Amendment and recommends granting Cribb summary judgment on Plaintiff's state law negligence-based claims. The Court REJECTS the Report's recommendation that Cribb's Motion be denied as to Plaintiff's § 1983 claim and that Cribb be denied qualified immunity. The Court does not decide whether the second PIT maneuver violated the Fourth Amendment; it assumes without deciding that the evidence could establish a constitutional violation and holds that Cribb is entitled to qualified immunity because the asserted right was not clearly established on March 26, 2022.

3. Cribb's Motion for Summary Judgment (DE 21) is GRANTED in full, and all claims asserted against Cribb are dismissed.

4. The claims against the remaining Defendants are unaffected by this Order and remain pending.

**IT IS SO ORDERED.**

Florence, South Carolina
August 24, 2026

Joseph Dawson, III
Joseph Dawson, III
United States District Judge